**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES WILLIAMS, | : | |
| Plaintiff, | : | Civil No. 07-5395 (SRC) |
| v. | : | |
| JACK DOES 1-40, et al., | : | **O P I N I O N** |
| Defendants. | : | |

**APPEARANCES:**

    JAMES WILLIAMS, Plaintiff Pro Se
    17 North New Hampshire Avenue
    Atlantic City, New Jersey 08401

**Stanley R. Chesler, District Judge**

This matter comes before the Court upon submission of an amended complaint ("Amended Complaint") by Plaintiff James Williams ("Williams"). See Docket Entry No. 4. For the reasons stated below, Williams' Amended Complaint will be dismissed without prejudice. Williams will be granted leave to re-amend his Amended Complaint.

**BACKGROUND**

**I. ORIGINATION OF THE INSTANT ACTION**

On September 21, 2007, the Clerk received the complaint ("Original Complaint") docketed as Entry No. 1 in the Civil Action

Page -1-

Banda v. Corzine, 07-4508 (WJM) ("Banda Matter"), as well as Entry No. 1 in the instant matter. The Original Complaint asserted claims on behalf of numerous plaintiffs ("Plaintiffs"), with Williams being one of them.[1] See Docket Entry No. 1. On November 1, 2007, Judge Martini, presiding over the Banda Matter, issued an Order and accompanying Opinion ("November Order and November Opinion") dismissing the Original Complaint and terminating the Banda Matter. See instant matter, Docket Entries Nos. 2, 3. Pursuant to Judge Martini's November Order, all Plaintiffs other than Plaintiff Banda were terminated as Plaintiffs in the Banda Matter, and the Clerk opened individual matters for each of these Plaintiffs, Williams being one of them. See id. In addition, pursuant to Judge Martini's November Order, Williams' claims contained in the Original Complaint were dismissed without prejudice, and Williams was granted leave to amend the Original Complaint. See id.

On November 30, 2007, Williams submitted his Amended Complaint, together with an application for appointment of pro bono counsel. See Docket Entry No. 4, 5. Consequently, this Court directed the Clerk to reopen the instant matter for the purpose of

---

[1] Plaintiffs were a group of involuntary civilly-committed persons, pursuant to the Sexually Violent Predator Act ("SVPA"), N.J. Stat. Ann. § 30:4-27.24, et seq., and confined at the Special Treatment Unit Annex, Avenel, New Jersey ("Facility"); Plaintiffs "self-certified" themselves into a "class" for the purpose of filing their original complaint. See Docket Entry No. 1.

screening Williams' Amended Complaint. See Docket Entry No. 7.

## II. WILLIAMS' ALLEGATIONS

### A. Allegations Stated in the Original Complaint

This Original Complaint submitted by Plaintiffs alleged that, on August 30, 2007, Plaintiffs' constitutional rights were violated by one hundred and eight defendants.[2] See Docket Entry No. 1. The allegations set forth in the Original Complaint fell into two categories: (1) those common to all Plaintiffs; and (2) those based on the circumstances particular to--and, therefore, presenting claims unique to--individual Plaintiffs. See id. The allegations common to all Plaintiffs were summarized by Judge Martini as follows:

> According to Plaintiffs, the chain of August 30th events started at 8:25 A.M. with the appearance of an unnamed corrections officer, who was "with a 'gun.'" Allegedly, five minutes later, at 8:30 A.M., Plaintiffs . . . were "ordered to the Dayroom [and] told to line up and face the wall, [and] keep eyes forward." Plaintiffs allege that, five minutes later, they were "pat-searched and led

---

[2] The list of original Defendants was as follows: Defendant Jon Corzine, Governor of the State of New Jersey; Defendant George Hayman, Commissioner of New Jersey Department of Corrections; Defendant Bernard Goodwin, Administrator of the Facility; Defendant Cindy Sweeney, Assistant Superintendent of the Facility; Defendant Anne Milgram, Attorney General for the State of New Jersey; Defendant Merrill Main, Clinical Director of the Facility; Defendant Tina Spanuolo, Supervising Program Specialist at the Facility; and one hundred John/Jack/Jane/Joan Doe Defendants, who are corrections officers or public advocates employed by the State of New Jersey, as well as Defendant John Doe, who is a "Regional Commander of Department of Corrections." See id., caption.

> to the Rec[reation] Yard." Seven minutes after they entered the recreation yard, Plaintiffs were handed cups and served with, approximately, half-a-cup of water per person. From this point on, water was re-served to Plaintiffs on half-an-hour or hourly basis, although Plaintiffs were finding the supply of water insufficient, and the water itself insufficiently chilled. According to Plaintiffs, at 8:45 A.M., that is, thirteen minutes after Plaintiffs were removed into the recreation yard, the Facility officials brought drug-sniffing canines into the Facility and began a search for controlled substances; the search inside the Facility continues for one hour and twenty-two minutes, and it was followed by a one hour and thirteen minutes search of the external parts of the Facility and adjoining trailers. After the search was completed, Plaintiffs were ordered to line up in the recreation yard . . . and, fifteen minutes later, an unspecified number of [Plaintiffs] . . . was brought into the Facility for lunch. About half an hour later, another group of [Plaintiffs] . . . was brought into the Facility for lunch. The remaining [Plaintiffs] . . . were brought into the Facility to consume lunch in unspecified sub-groups and time increments, with the last Detainee being brought into the Facility no later than at 1:25 P.M., that is, about two hours after the entire lunch service started. Plaintiffs assert[ed] that Plaintiffs experienced "intimidation" during their return to the Facility as a result of a "show of force" which ensued from the fact that the Facility officers were "holding . . . 'Riot Guns.'" Plaintiffs assert[ed] that [they] were denied (a) access to bathrooms for the period of five minutes, and (b) access to showers for about ten minutes. The . . . "Dayroom" and Mess Hall became . . . available for regular use by [Plaintiffs] one hour and twelve minutes after all [they] returned to the Facility.

Banda Matter, Docket Entry No. 3, at 3-6 (citations and footnotes omitted). In addition, Judge Martini's November Opinion summarized allegations unique to each Plaintiff. See id. at 6-11. With respect to Williams, Judge Martini noted that the Original Complaint

> alleges that, at 4:25 P.M., that is, three hours after all [Plaintiffs] returned to the Facility, Plaintiff

> Williams was taken to see a nurse for a reason not clarified in the [Original] Complaint. Apparently, Plaintiff Williams was placed in a wheelchair (by an unknown entity) when he was taken to see the nurse. Twenty minutes later, for reasons not clarified in the [Original] Complaint, Plaintiff Williams was taken to a hospital. Plaintiff Williams returned to the Facility the next day, August 31, 2007, at 3:45 P.M.

Id. at 10 (citations omitted).

### B. Judge Martini's Treatment of the Original Complaint

Responding to Plaintiffs' common claims that

> the search for controlled substances performed by the Facility officials was an "unlawful 'prison' search" impermissible with respect to . . . civilly-committed . . . Plaintiffs [as well as to Plaintiff's allegations that] the search . . . amounted to a cruel and unusual punishment . . . since: (a) "there was [n]o shade in the [recreation] yard with the exception of a small tent[,] which could not accommodate" [everyone in the yard]; (b) [the outside temperature was] 90 to 95 degree[s]"; (c) re-servings of water to [Plaintiffs] was no more frequent than every half an hour and the water served was "usually warm"; and (d) corrections officers "brandished M-16 style guns with individualized mace balls, [and] other weapons[,] such as batons and night sticks[,] were also brandished,"

id. at 12, Judge Martini dismissed these allegations for failure to state a claim upon which relief may be granted. See id. at 21-36.

Addressing Plaintiff's Fourth Amendment claims, Judge Martini explained that, pursuant to Hudson v. Palmer, 468 U.S. 517, 530 (1984), and Bell v. Wolfish, 441 U.S. 520, 558-560 (1979), the search of the Facility was not "illegal," because Plaintiffs' expectations of privacy yield to the Facility officials' legitimate

governmental interests to ensure that the Facility remains free of controlled substances. See Docket Entry No. 3, at 22-23. With respect to Plaintiff's due process claims, Judge Martini subdivided Plaintiffs' allegations into three groups: (1) those challenging Plaintiffs' conditions of confinement; (2) those asserting verbal and "visual" harassment; and (3) those related to Plaintiffs' medical conditions. See id. at 23-36. Judge Martini clarified to Plaintiffs that acts or verbal (or "visual") harassment cannot, on their own, serve as a basis to cognizable constitutional challenges. See id. at 30-31.

Addressing Plaintiffs' medical claims, Judge Martini first detailed to Plaintiffs the applicable standard and then addressed their substantive claims. See id. at 32 (citing Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981); Estelle v. Gamble, 429 U.S. 97 (1976); and Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). While Judge Martini dismissed the bulk of Plaintiffs' medical claims with prejudice, see id. at 33-35, he stated, with respect to Williams' claims, that

> the [Original] Complaint is not clear as to the medical needs, and treatment of those needs by the Facility's medical personnel (or the hospital personnel), with respect to . . . Plaintiffs [like Williams]. While it appears that these . . . Plaintiffs were availed to immediate attention by the corrections officials when these . . . Plaintiffs developed their ailments and/or medical conditions, the Complaint fails to specify whether . . . Williams obtained any medical treatment at the hospital where [he was] taken.

Id. at 35.

Consequently, Judge Martini granted Williams leave to amend the Original Complaint by clarifying Williams' claims. See id. at 62.

Next, with respect to Plaintiffs' conditions of confinement claims, Judge Martini explained to Plaintiffs that the Third Circuit established a two-part test reading as follows:

> we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them.

Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983). Taking judicial notice of the weather conditions existing in Plaintiffs' locale during the hours at issue,[3] Judge Martini concluded that, being placed in the Facility's recreation yard for three to five hours on a summer morning, when the weather conditions were mild, could not amount to a "hardship over an extended period of time," or to "adverse conditions" excessive in relation to the purpose of keeping Facility detainees outside the Facility during a legitimate search for controlled substances. See id. at 26-27. Consequently, Judge Martini dismissed all

---

[3] The weather conditions were as follows: temperature varied between 72 and 84.5 degrees Fahrenheit, humidity was 61 percent, and western wind varied from 3.5 to 6.9 mph. See Docket Entry No. 3, at 26

Plaintiffs' conditions of confinement common claims.

Finally, turning to the issue of whether to certify Plaintiff's class, Judge Martini explained that the Original Complaint provided him with no basis for such certification, pursuant to the standard set in Rule 23, see id. at 36-50, and denied certification while observing that a court should be

> mindful of the fact that it is all too easy for one inmate with some purported knowledge of the law to persuade others to join a complaint, whether or not it is in the best interests of the others to do so.

Id. at 38 (citing Swenson v. MacDonald, 2006 U.S. Dist. LEXIS 5784, at *5-6 (D. Mont. Jan. 30, 2006)). Judge Martini, therefore, dismissed the Original Complaint for failure to state a claim upon which relief may be granted and, in addition, enjoined the Clerk from opening any new matters, in which Plaintiff Banda sought to act as a pro se in forma pauperis plaintiff asserting a civil rights violation, without first obtaining leave of the Court. See Docket Entries Nos. 3, 4.

### C. Content of Williams' Amended Complaint

On November 30, 2007, Williams submitted his Amended Complaint. See Docket Entry No. 4. The Amended Complaint is a nine-page document naming, as Defendants, "John Doe, Regional Commander of the Department of Corrections Special Operations Group" and Jack Does, 1-40, as well as Joan Doe, 1-40, who are "Department of Corrections Special Operations Group Correctional

Officers." See id. at 1, caption. Following the caption, the Amended Complaint includes: (a) 5 paragraphs of self-typed (rather then pre-printed) "Instructions," see id. at 1; (b) two pre-printed pages of instructions titled "Form to Be Used by a Prisoner in Filing a Civil Rights Complaint," see id. at 2-3; (c) self-typed list of parties named in the Amended Complaint asserting that the Defendants in this action "gave unprofessional errors of judgement and gross negligence in ordering and enforcing the removal of all [Facility detainees] from the . . . [b]uilding to stay out in [h]ot [s]un for approx[imately six and a half] hours," see id. at 4-5; (d) self-typed section titled "Statement of Claims" consisting of 29 paragraphs, see id. at 5-9; and (e) a request for relief in the amount of $815 million in damages, where $15 million are sought from Defendant "John Doe, Regional Commander of the Department of Corrections Special Operations Group," and $10 million are sought from each Joan and/or Jack Doe, who are "Department of Corrections Special Operations Group Correctional Officers." See id. at 9.

Short of four exceptions detailed below, all parts of the Amended Complaint are substantively identical to the corresponding parts of the Original Complaint. Cf. Docket Entries Nos. 1, 4. Moreover, short of the same four exceptions, the Amended Complaint is substantively and literally identical to: (a) an "amended complaint" submitted by Plaintiff Banda ("Banda's Complaint") and construed by Judge Martini as Plaintiff Banda's motion for

reconsideration of the November Order, see <u>Banda</u> Matter, 07-4508, Docket Entries Nos. 6, 7; and (b) other "amended complaints" filed by Plaintiffs with this District and assigned, <u>inter alia</u>, to this Court. <u>See e.g.</u>, <u>Haines v. Jack Does 1-40</u>, 07-5387 (SRC), Docket Entry No. 4 ("Haines' Complaint"). These four exceptions excluded, Williams' Amended Complaint repeats, nearly verbatim, the allegations that were addressed by Judge Martini and dismissed, for failure to state a claim, in Judge Martini's November Order and November Opinion.

The sole difference between Williams' Amended Complaint and Banda's Complaint or Haines' Complaint is limited to four entries, namely:

(1-2)  the statement that "[d]ue to personal medical reasons of [Williams], [m]edical [d]octors ha[ve] informed [Williams] not to go outside in 80 degree and above weather or 32 degree and below weather." Docket Entry No. 4, at 6. The same statement is repeated one more time, verbatim, on the next page of the Amended Complaint. <u>See</u> Docket Entry No. 4, at 7.

(3-4)  the statement that, on August 30, 2007, Williams "suffered [h]eat [s]troke which lead to and brought on a [h]eart [a]ttack." Docket Entry No. 4, at 6. The same statement is repeated one more time, verbatim. <u>See</u> Docket Entry No. 4, at 7.

D. **Williams' Amended Complaint Fails to State a Claim**

Short of the four entries detailed in the preceding Section of this Opinion, the Amended Complaint repeats the allegations made in the Original Complaint and dismissed by Judge Martini for failure to state a claim upon which relief may be granted. Judge Martini's ruling will not be disturbed by this Court: Williams cannot get a "second bite on the apple" by merely reiterating the dismissed claims. Therefore, this Court's analysis will be limited to the allegations made in the four entries detailed in the preceding Section of this Opinion.

1. **Due Process Claims**

Since "the Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner," Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (citation omitted); see also Bell, 441 U.S. at 544; City of Revere v. Massachusetts, 463 U.S. 239, 244 (1983), the Eighth Amendment sets forth the floor for the standard applicable to the claims of civilly-committed or pre-trial detainees. See Bell, 441 U.S. at 544. Thus, a failure of prison officials to provide minimally civil conditions of confinement to pre-trial or civilly-committed detainees, or deliberate indifference to a serious medical needs of such detainees, violates their right not to be punished without due process of law. See Reynolds, 128 F.3d at

173-74; Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 345-46, n.31 (3d Cir. 1987); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825 (1994).

Analysis of whether a civil detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Fuentes, 206 F.3d at 341-42.

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of [civil] detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.[4]

---

[4] The government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Bell, 441 U.S. at 540. Retribution and deterrence, however, are not legitimate non-punitive governmental objectives. See id. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. See id. at 539, 561-62 and n.20.

441 U.S. at 535-39 (citations omitted).

Thus, conditions of confinement, which involve an unnecessary and wanton infliction of pain or risk of harm, amount to a violation of a pre-trial or involuntarily civilly-committed detainee's constitutional rights. Accord Rhodes, 452 U.S. at 346, 347. However, the definition of "unnecessary and wanton infliction of pain" is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)). Therefore, if a detainee asserts a conditions of confinement claim alleging denial of medical care, the detainee must show that the defendants were deliberately indifferent to his/her serious medical needs. See Estelle v. Gamble, 429 U.S. 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Persistent severe pain qualifies as a serious medical need. A medical need is also serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner

from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197; Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied 486 U.S. 1006 (1998). However, a refusal to consider inmate's self-diagnoses or to summon the medical specialist of the inmate's choice cannot amount to cruel and unusual punishment. See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

### 2. The Shortcomings of the Amended Complaint

As drafted, Williams' twice repeated allegation that "[m]edical [d]octors . . . informed [him] not to go outside in 80 degree and above weather or 32 degree and below weather" and that he "suffered [h]eat [s]troke [as a result of being outside during temperature exceeding 80 degrees] which lead to and brought on a [h]eart [a]ttack," Docket Entry No. 4, at 6-7, do not state a cognizable claim. Nothing in these allegations indicates that Defendants sought to inflict unnecessary and wanton pain on Williams when Defendants removed all the Facility detainees into the Facility recreation yard in order to conduct a Facility-wide search for controlled substances. Rather, it appears apparent that

Defendants were pursuing a legitimate goal reasonably related to the Facility's governmental penological interests. Moreover, nothing in Williams' allegation indicates that Defendants were deliberately indifferent to the risk of harm to Williams' health when they removed all the Facility detainees into the Facility recreation yard, since the Amended Complaint does not state any fact suggesting that: (a) Williams (or any other person or entity) notified Defendants of the possibility that Williams' health might be at risk if he is removed to the recreation yard and stay there when the outside temperature raises above 80 degrees; and (b) it would be obvious to a lay person that being in the recreation yard for the period of five or so hours during a summer morning posed a risk to Williams' health. See generally, Docket Entry No. 4.

The language used by Williams merely suggests that Williams himself was aware of the risk to his health. See Docket Entry No. 4, at 6-7. Since the Amended Complaint does not indicate that Defendants were notified of that risk while they were pursuing legitimate penological goals, Defendants could not have acted with "intent to inflict unnecessary and wanton pain" and, therefore, Williams' Amended Complaint fails to state a claim upon which relief may be granted. However, the actual language used in Williams' Amended Complaint appears to be an unreliable source of information in view of excessive and suspicious similarities between the language used in Williams' Amended Complaint and that

in the Original Complaint, as well as in Banda's Complaint and Haines' Complaint. Taking note of Judge Martini's observation that "the court should be mindful of the fact that it is all too easy for one inmate with some purported knowledge of the law to persuade others to join a complaint," Banda Matter, 07-4508, at 38, this Court expresses its grave concern about the possibility that Williams' instant litigation is being hijacked by one of the original Plaintiffs (who might or might not be Plaintiff Banda enjoined, by Judge Martini, from future meritless pro se in forma pauperis filings with this District). Therefore, this Court is reluctant to find, conclusively, that Williams' allegations cannot state a cognizable claim. This Court, consequently, will dismiss Williams' Amended Complaint without prejudice and grant Williams, one more time, leave to re-amend his Amended Complaint by detailing the facts: (a) known to Williams, personally, and serving as basis for Williams' impressions and/or beliefs; and (b) relating to Williams' removal to the recreation yard. Specifically, this Court wishes to obtain a statement from Williams whether the medical advice given to Williams (i.e., the advice not to be outdoors in the event the outside temperature reaches 80 degrees or above) was either conveyed by Williams or by any other person to any Defendant(s), directly or indirectly, or was given to Williams under the circumstances that were observed by any Defendant(s) and made the nature of this advice obvious to a lay person.

The Court stresses the fact that (while Williams may, if he actually so wishes, seek help from and/or consult with a licenced attorneys or discuss his case with unlicensed "jailhouse lawyers," or any of his acquaintances at the Facility and/or outside it, for the purposes of this litigation, as well as with respect to Williams' submission of his new amended complaint) it is Williams--and Williams alone--who is the master of his claims and the sole plaintiff in this action.[5]

### CONCLUSION

For the foregoing reasons, Williams' Amended Complaint will be dismissed without prejudice. The Court will grant Williams leave to re-amend his Amended Complaint.

Williams' application for appointment of <u>pro bono</u> counsel is denied without prejudice.

An appropriate Order accompanies this Opinion.

                                                              **Stanley R. Chesler**
                                                              **United States District Judge**

Dated: 1/7/08

---

[5] While the Court does not obligate Williams to utilize the blank civil rights complaint form served upon Williams, together with this Opinion and accompanying Order, the Court encourages Williams to make use of this pre-printed form.