```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |  |
|---|---|---|
| CHARLES HAINES, | : | |
| | : | |
| Plaintiff, | : | Civil Action Nos. |
| | : | 07-5387 (SRC) and |
| v. | : | 07-5395 (SRC) |
| | : | |
| JACK DOES 1-40, et al., | : | |
| | : | **O P I N I O N** |
| Defendants. | : | |
| | : | |
| JAMES WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **APPLIES TO BOTH ACTIONS** |
| v. | : | |
| | : | |
| JACK DOES 1-40, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

This matter comes before the Court upon submission of "re-amended" complaints by Plaintiff Charles Haines ("Haines") and James Williams ("Williams"). The now-extensive history of both litigations was recently summarized by this Court in an order issued on February 27, 2008, see Haines v. Does, 07-5387, Docket Entry No. 13; Williams v. Does, 07-5395, Docket Entry No. 10, and additional discussions of how these actions were originated, what were the facts initially pled and how those original pleadings were altered by Haines and Williams' amended complains, as well as which legal standards were applied by Judge William J. Martini and, later on, by this Court and what shortcomings were detected

by Judge Martini and this Court could be found by the reader in <u>Haines v. Does</u>, 07-5387, Docket Entries Nos. 2, 8 and 11; <u>Williams v. Does</u>, 07-5395, Docket Entries Nos. 2, 7 and 8.

A detailed recitation of dozens of pages containing previous discussions appears to be wholly unnecessary at the instant juncture, since the parties' familiarity with their own matters is presumed. It shall suffice, therefore, to: (a) state merely that both Plaintiffs are involuntarily civilly-committed persons confined at the Special Treatment Unit Annex, Avenel, New Jersey ("Facility"): and (b) provide a three-page reminder of the facts and issues at hand.

The events underlying both actions were summarized by Judge Martini as follows:

> the chain of August 30th events started at 8:25 A.M. with the appearance of an unnamed corrections officer, who was "with a 'gun.'" Allegedly, [ten] minutes later [Plaintiffs] were "pat-searched and led to the Rec[reation] Yard" [where they] were handed cups and served with . . . water [that was] insufficiently chilled [and provided in ammounts less than those desired by Plaintiffs. A few minutes later], the Facility officials brought drug-sniffing canines into the Facility and began a search for controlled substances [and a] search of the external parts of the Facility and adjoining trailers. After the search was completed, Plaintiffs were ordered to line up in the recreation yard . . . and . . . brought into the Facility for lunch. . . . Plaintiffs assert[ed] that Plaintiffs experienced "intimidation" during their return to the Facility as a result of a "show of force" which ensued from the fact that the Facility officers were "holding . . . 'Riot Guns[,]'" . . . were denied (a) access to bathrooms for the period of five minutes, and (b) access to showers for about ten minutes. The . . . "Dayroom" and Mess Hall became . . . available for

>   regular use by [Plaintiffs] one hour and twelve minutes
>   after all [they] returned to the Facility.

Banda v. Corzine, 07-4508 (WJM) ("Banda Matter"), Docket Entry No. 3, at 3-6 (citations and footnotes omitted).  Judge Martini noted that the aforesaid original allegation also specified that

>   five minutes after being brought into the recreation
>   yard, Plaintiff Haines "g[o]t [a] mild [h]eart [a]ttack
>   and [was] rushed to see [a] [n]urse."  Apparently,
>   Plaintiff Haines was treated by a nurse and was able to
>   return to the recreation yard sometime before 12:15
>   P.M.  However, Plaintiff Haines experienced his second
>   "mild heart attack" and was taken to see a nurse at
>   8:30 P.M., about seven hours after all [Plaintiffs]
>   were returned in the Facility.
>   . . .
>   [A]t 4:25 P.M., that is, [at least] three hours after .
>   . . return[ing] to the Facility, Plaintiff Williams was
>   taken to see a nurse for a reason not clarified in the
>   [Original] Complaint.  Apparently, Plaintiff Williams
>   was placed in a wheelchair (by an unknown entity) when
>   he was taken to see the nurse.  Twenty minutes later,
>   for reasons not clarified in the [Original] Complaint,
>   Plaintiff Williams was taken to a hospital.  Plaintiff
>   Williams returned to the Facility the next day, August
>   31, 2007, at 3:45 P.M.

Id. at 7-8, 10 (citations omitted).

>   Responding to Plaintiffs' common claims that
>
>   the search for controlled substances performed by the
>   Facility officials was an "unlawful 'prison' search"
>   impermissible with respect to . . . civilly-committed .
>   . . Plaintiffs [as well as to Plaintiff's allegations
>   that] the search . . . amounted to a cruel and unusual
>   punishment . . . since: (a) "there was [n]o shade in
>   the [recreation] yard with the exception of a small
>   tent[,] which could not accommodate" [everyone in the
>   yard]; (b) [the outside temperature was] 90 to 95
>   degree[s]"; (c) re-servings of water to [Plaintiffs]
>   was no more frequent than every half an hour and the
>   water served was "usually warm"; and (d) corrections
>   officers "brandished M-16 style guns with

>individualized mace balls, [and] other weapons[,] such
>as batons and night sticks[,] were also brandished,"

id. at 12, Judge Martini dismissed these allegations for failure to state a claim upon which relief may be granted. See id. at 21-36. Judge Martini explained that, pursuant to Hudson v. Palmer, 468 U.S. 517, 530 (1984), and Bell v. Wolfish, 441 U.S. 520, 558-560 (1979), the search of the Facility was not illegal under the Fourth Amendment, and Plaintiff's due process claims appeared not viable except for the sole aspect related by Plaintiffs' medical conditions. Specifically, Judge Martini stated that

>the [Original] Complaint is not clear as to the medical
>needs, and treatment of those needs by the Facility's
>medical personnel (or the hospital personnel), with
>respect to . . . Plaintiffs [like Haines or Williams].
>While it appears that these . . . Plaintiffs were
>availed to immediate attention by the corrections
>officials when these . . . Plaintiffs developed their
>ailments and/or medical conditions, the Complaint fails
>to specify whether . . . Haines['] . . . secondary
>occurrences of [his] medical condition [was] caused by
>the nurse's failure to provide . . . Haines . . . with
>any treatment during [his] initial medical conditions
>(or by unjustified undue delays in medical services)
>[or whether] Williams obtained any medical treatment at
>the hospital where [he was] taken.

Id. at 35. Consequently, Judge Martini directed the Clerk to open new individual matters for Haines and Williams and granted Haines and Williams leave to amend the Original Complaint through submission of their individual amended complaints. See id. at 62. Both of these newly-created individual matters were assigned to the undersigned.

The first round of Haines and Williams' amended complaint yielded little success. Both Haines and Williams submitted pleadings virtually identical to the Original Complaint dismissed by Judge Martini; the minor changes included in their amended pleadings presented nothing but legally inconsequential embellishment on the original charges. See Haines v. Does, 07-5387, Docket Entry No. 8, at 15-19 (detailing shortcomings of Haines' amended pleading); Williams v. Does, 07-5395, Docket Entry No. 7, at 14-15 (detailing shortcomings of Williams' amended pleading). Moreover, their amended pleadings clearly indicated that the potential claims surmised by Judge Martini were not present. See id. (noting Plaintiffs' statements that they had no claims with respect to the actions of the Facility correctional officers and/or any medical staff). This Court, however, noted that Haines and Williams' amended complaint vaguely indicated that Haines and/or Williams might still be holding viable claims. Haines v. Does, 07-5387, Docket Entry No. 8, at 18-19 (observing that, although Haines' amended complaint contained no allegation suggesting that Defendants were aware of Haines' health-bases inability to return to the recreation yard after Haines visited the nurse, Haines might have wished to make such allegation); Williams v. Does, 07-5395, Docket Entry No. 7, at 15 (noting that--although Williams' amended pleading was silent as to Defendants' awareness about Williams' health-bases

inability to be outdoors in the event the temperature rose to 80-plus degrees at the time Defendants removed all Facility detainees to the recreation yard, where the temperature fluctuated between 74 and 82.5 degrees Fahrenheit--Williams might have wished to so allege).

The Court, therefore, concluded that

> the actual language used in [Haines and Williams'] Amended Complaint[s] appear[ed] to be an unreliable source of information in view of excessive and suspicious similarities between the language used in [Haines and Williams'] Amended Complaint[s] and that in the Original Complaint, as well as in [the amended complaint filed by the presume draftsman of the Original Complaint]. Taking note of Judge Martini's observation that "the court should be mindful of the fact that it is all too easy for one inmate with some purported knowledge of the law to persuade others to join a complaint," Banda Matter, 07-4508, at 38, this Court expresse[d] its grave concern about the possibility that [Haines and Williams'] instant litigation [was] hijacked by [another inmate having no relation to Haines and Williams' actions but enjoying a certain "status" allowing him to dictate Haines and Williams the content of their pleadings]. Therefore, this Court [stated that it was] reluctant to find, conclusively, that [Haines and Williams'] allegations [could not] state a cognizable claim.

Haines v. Does, 07-5387, Docket Entry No. 8, at 19; Williams v. Does, 07-5395, Docket Entry No. 7, at 15-16.

Consequently, the Court directed Haines and Williams to submit their "re-amended" complaints and clarified to them which vaguely stated aspects of their amended pleadings were so drafted as to suggest that Plaintiffs might, if granted leave to amend, cure the deficiencies.

I.    PLAINTIFFS' INSTANT ALLEGATIONS

As explained above, the Court explained that Haines' "re-amended" complaint could not merely state that Haines "was given permission [by the nurse] to return to [the Facility] to rest, but . . . was led to the [recreation yard by Defendants] instead." See Haines v. Does, 07-5387, Docket Entry No. 8, at 20 (referring Docket Entry No. 4, at 7).  The Court stressed that Haines' "re-amended" complaint had to allege at least his belief (as well to state at least some factual basis for his belief) that Defendants were aware of nurse's advice to Haines (i.e., the advice not to return to the recreation yard but to go to the Facility in view of the allegedly acute medical condition that brought Haines to the nurse).  See id.

Turning to Williams' pleadings, the Court clarified to Williams that--instead of stating that "[d]ue to personal medical reasons of [Williams], [m]edical [d]octors ha[ve] informed [Williams] not to go outside in 80 degree and above weather or 32 degree and below weather"--Williams' "re-amended" complaint had to allege at least his belief (as well to state at least some factual basis for Williams' belief) that Defendants removed all Facility detainees into the recreation yard while being aware of Williams' inability to be outdoors in the event the outside temperature reaches 80-plus degrees.  See Williams v. Does, 07-5395, Docket Entry No. 7, at 16 (referring to Docket Entry No. 4,

at 7).  Both Plaintiffs submitted their respective "re-amended" pleadings.

Williams' re-amended complaint is, alas, a slightly altered copy of the Original Complaint dismissed by Judge Martini and Williams' amended complaint dismissed by this Court without prejudice.  The only language that this Court was able to detect and qualify as responding to its order to submit a re-amended complaint reads as follows:

> Let it be known here and now that this Plaintiff (due to medical conditions) is not allowed to be outside in 90 degree or above weather, nor is he to be in 32 degree ([f]reezing) and below weather.

Williams v. Does, 07-5395, Docket Entry No. 9, at 7.

In contrast, Haines' amended pleading appears to be a document expressly intended to re-amend his previous amended complaint.  His submission reads, in pertinent part, as follows:

> Medical advice [as to Haines' need to return to the Facility, rather than the recreation yard] was directly conveyed to this Plaintiff by the [n]urse, of which this advice was at first in[]directly conveyed to low[-]rank Defendant(s) by the [n]urse when this Plaintiff was being told, then the same medical advice was repeated and directly conveyed to low[-]rank Defendants by the [n]urse.  To which was conveyed to the higher rank Defendant(s) by the lower[-]rank subordinate Defendant(s).

Haines v. Does, 07-5387, Docket Entry No. 12.

The difference in "re-amended" pleadings submitted by Haines and Williams is decisive: while Williams' allegations fail to state a claim, Haines' statements pass muster of Rule 8.

**II.   STANDARD OF REVIEW: RULE 8 PLEADING REQUIREMENT**

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to puss muster under

the Rule 8 standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals explained:

> [There are] two new concepts in Twombly.  First, . . . [t]he [Twombly] Court explained that "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-65 . . . .   The Court explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Id. at 1965 n.3.  Later, the Court referred to "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Id. at 1966.  The Court further explained that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965 & n.3.  Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from Conley.  See id. at 1968. . . . As the Court instructed, "[t]his phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 127 S. Ct. at 1969.
>      [T]he Twombly decision focuses our attention on the "context" of the required short, plain statement.  Context matters in notice pleading. . . . [Thus,] taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  See Airborne Beepers & Video, Inc., v. AT&T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007).  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  [Hence,] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also

>    the "grounds" on which the claim rests.  See Twombly, 127 S. Ct. at 1965 n.3.
>         The second important concept . . . is the rejection of Conley's "no set of facts" language [which became] problematic because, for example, it could be viewed as requiring judges to speculate about undisclosed facts. . . .  After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct."  Id. . . .  The Court [however,] emphasized . . . that it was neither demanding a heightened pleading of specifics nor imposing a probability requirement.  See id. at 1964, 1965, 1973 n.14, 1974; [accord] Erickson, 127 S. Ct. at 2200.
>         The more difficult question raised by Twombly is whether the Supreme Court imposed a new "plausibility" requirement at the pleading stage that materially alters the notice pleading regime.  . . . The Court explained that a plaintiff must "nudge [his or her] claims across the line from conceivable to plausible" . . . .  127 S. Ct. at 1974. . . . "Plausibility" is related to the requirement of a Rule 8 "showing." [Thus, while the court cannot] dismiss[] . . . a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965. [T]he pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  Id.  This "does not impose a probability requirement at the pleading stage[]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id.

Phillips, 515 F.3d at 230-34 (original brackets removed).


### III. FOURTEENTH AMENDMENT DUE PROCESS CLAIM

Since "the Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner," Reynolds v. Wagner, 128 F.3d 166, 173 (3d

Cir. 1997) (citation omitted); see also Bell, 441 U.S. at 544; City of Revere v. Massachusetts, 463 U.S. 239, 244 (1983), the Eighth Amendment sets forth the floor for the standard applicable to the claims of civilly-committed or pre-trial detainees.  See Bell, 441 U.S. at 544.  Thus, a failure of prison officials to provide minimally civil conditions of confinement to pre-trial or civilly-committed detainees, or deliberate indifference to a serious medical needs of such detainees, violates--by definition--the detinees' right not to be punished without due process of law.  See Reynolds, 128 F.3d at 173-74; Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 345-46, n.31 (3d Cir. 1987); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825 (1994).

   Analysis of whether a civil detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Fuentes, 206 F.3d at 341-42.

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of [civil] detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction

>or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

441 U.S. at 535-39 (citations omitted).

The government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Bell, 441 U.S. at 540.  Retribution and deterrence, however, are not legitimate non-punitive governmental objectives.  See id. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  See id. at 539, 561-62 and n.20.

Since a sweeping search of the facility for presence of controlled substances is certainly a legitimate governmental purpose, a removal of civilly-committed detainees in the facility recreation yard for the purposes of conducting such search does not violate the detainees' due process, especially if the detainees are placed in the yard only for a few hours, served certain amount of water, allowed to consume their lunch in a timely fashion, and the entire event takes place during a summer morning when the temperature fluctuates between 74 and 82.5

degrees Fahrenheit.  See Banda Matter, 07-4508, Docket Entry No. 3 (where Judge Martini provided exhaustive discussion of Plaintiffs' due process claims).  In contrast, if defendants place a plaintiff-detainee in the facility recreation yard while being aware of the fact that the plaintiff's health could be at risk, such risk might be found excessive in relation to the purpose of conducting a search of the facility and, thus, the defendants' actions could be deemed "punishment" within the meaning of the Fourteenth Amendment.

**IV.   SUFFICIENCY OF PLAINTIFFS' RE-AMENDED PLEADINGS**

   **A.   Williams' "Let It be Known Here And Now" Allegations**

   In his re-amended complaint, Williams states:

   Let it be known here and now that this Plaintiff (due to medical conditions) is not allowed to be outside in 90 degree or above weather, nor is he to be in 32 degree ([f]reezing) and below weather.

Williams v. Does, 07-5395, Docket Entry No. 9, at 7.

   Williams' "let it be known here and now" language does not state--or even hint at--any factual basis indicating that, in the morning of August 30, 2007, any Defendant was aware about Williams' medical condition.  Therefore, Williams' statement provides this Court with no reason to construe his allegations as "facts suggestive of the proscribed conduct."  See Twombly, 127 S. Ct. at 1965.  Consequently, the Court neither can find that Williams' allegations, as drafted, present a plausible due

process claim[1] nor can presume that Williams, after being already given two opportunities to amend his pleadings, could come up with allegations having more factual heft than his generic "let it be known here and now" phrase.[2]

In view of the foregoing, Williams' allegations will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

---

[1] Moreover, in light of Judge Martini's judicial notice that the outdoor temperature in the vicinity of the Facility on August 30, 2007, reached the highest of **82.5** degrees, Williams' allegations about his proscription against exposure to weather of **90** degrees and up present a statement of fact wholly irrelevant to his legal claim.

[2] Ordinarily, the plaintiff may be granted "leave [to amend] . . . when justice so requires." See Foman v. Davis, 371 U.S. 178, 182 (1962); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 [*379] (3d Cir. 1993). Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman, 371 U.S. at 182-83. However, where the plaintiff had already amended plaintiff's complaint and yet failed to allege sufficient facts, the courts may find that "[t]hree bites at the apple is enough," and conclude that it is proper to deny leave to replead. Salinger v. Projectavision, Inc., 972 F. Supp. 222, 236 (S.D.N.Y. 1997) (citing Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2 (2d Cir. 1996); accord In re Career Educ. Corp. Secs. Litig., 2007 U.S. Dist. LEXIS 23635, at *36 (N.D. Ill. Mar. 29, 2007) (where "plaintiffs have had ample opportunities to research and plead their claims" but failed to compose a sufficient pleading, the complaint is dismissed with prejudice).

**B.   Haines' Allegations Against Unspecified Defendants**

In stark contrast with Williams' generic phrase, Haines' "re-amended" allegations, although limited to two sentences, are sufficient to meet the pleading requirements of Rule 8.  See Phillips, 515 F.3d at 230-34.  While not exactly eloquent, Haines allegations still allow inferences that: (a) Defendants heard the nurse's advice to Haines to avoid returning to the recreation yard and/or were expressly so advised by the nurse; and yet (b) Defendants ignored the nurse's opinion and put Haines' health at risk in order to continue searching the Facility.  Although later litigation of this claims might yield proof that Defendants' actions did not violate Haines' due process rights, this Court cannot ignore the fact that, as pled, Haines' claim appears plausible.³  Consequently, the Court will proceed Haines' allegations, as stated in his amended complaint and supplemented by his "re-amended" complaint, past the sua sponte dismissal stage.

---

   ³  The Court notes that it is not encouraged by Haines' usage of the word "Defendant(s)," which suggests that Haines is not even aware of how many Defendants were present during his conversation with the nurse: indeed, lack of such knowledge is odd, since a person typically knows whether he has the audience of one or of many.  That said, the Court recognizes that Haines' conversation with the nurse took place after Haines suffered an allegedly acute medical condition and, thus, it is plausible that Haines was not in position to register any information except for the abstract notion of Defendant(s)' presence.

The Court, however, cannot ignore the fact that Haines names, as Defendants, Jack Does 1-40, that is, unidentified entities not amenable to service. While the fact that Haines does not know the name of the officer (who allegedly ignored the nurse's advice and took Haines to the recreation yard after he suffered a medical condition) neither nullifies nor reduces Haines' claims, see Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004) ("Plaintiffs may be unaware of the identities and roles of relevant actors and, owing to their incarceration or institutionalization, unable to conduct a pre-trial investigation to fill in the gaps. But by itself, this lack of knowledge does not bar entry into a federal court. . . . [P]leading and the liberal discovery rules allow for meritorious claims to proceed even if a confined [detainee] cannot adduce all the necessary facts at the outset"), the courts usually do not order service of process on unidentified defendants.

> [The service] on Defendant[s] John Doe[s will not be ordered] because, as a practical matter, it is in most instances impossible for the United States Marshal to serve a summons and complaint on . . . unidentified defendant[s].

Stackhouse v. Maricopa County, 2006 U.S. Dist. LEXIS 50132, at *6 (D. Ariz. July 19, 2006). This Court, therefore, will direct filing of Haines "re-amended" complaint to enable him to conduct discovery and amend his "re-amended" complaint by specifying the names and titles of the officers allegedly responsible for

violation of Haines' due process rights, or by providing such alternative descriptions of these officers that would enable the United States Marshal to serve a summons and Haines' complaint upon Defendants.  See, e.g., Lyons v. Beard, 2008 U.S. Dist. LEXIS 10232, at *3 (M.D. Pa. Feb. 12, 2008) ("It is Plaintiff's responsibility to provide the Court with further information regarding []his Defendant to enable the United States Marshal to effectuate service upon him").  Provided that Haines timely amends his instant pleading by identifying his Defendants, this Court will direct service of Haines' "re-amended" complaint.[4]

---

[4]  To that effect, Haines is expressly notified that the task to conduct discovery procedures, including those needed to determine the identities of Defendants, rests with Haines, and the United States Marshal is neither expected to--nor will-- conduct discovery for the purpose of serving the Defendants.

**CONCLUSION**

For the foregoing reasons, Williams' Re-amended Complaint will be dismissed with prejudice.  Haines' Re-amended Complaint will be proceeded to the next stage.  This Court, however, will not direct service on Defendants until Haines provides the Court with information so identifying Defendants as to enable service of process.

An appropriate Order accompanies this Opinion.

s/Stanley R. Chesler
**Stanley R. Chesler**
**United States District Judge**

Dated: April 11, 2008